ELK REALTY CO. v. BOYCE.

(Supreme Court, Appellate Term. May 31, 1912.)

1. EVIDENCE (§ 434*)—PAROL EVIDENCE—VARYING CONTRACT.

Where a contract for the purchase of land provided that the vendor agreed to provide gas, water, electric light, etc., for the premises as soon as practicable after the execution of the contract, and that all the terms and representations made before or when the contract was executed were embraced therein, the purchaser could not afterwards claim that he was induced to sign the agreement by false representations that the premises were provided with gas, water, and electric light, and that there were other houses on the premises.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. § 434.*]

2. APPEAL AND ERROR (§ 999*)—EVIDENCE—PREJUDICE.

A verdict founded on obvious prejudice should not be permitted to stand.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. § 999.*]

Seabury, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Elk Realty Company against William Boyce, Jr., impleaded with another. From a judgment for defendant named, plaintiff appeals. Reversed, and new trial granted.

Argued May term, 1912, before SEABURY, LEHMAN, and PAGE, JJ.

Sternberg, Jacobson & Pollock, of New York City (H. Louis Jacobson, of New York City, of counsel), for appellant.

Joseph J. Harris, of New York City, for respondent.

LEHMAN, J. [1] The defendant agreed in writing to purchase a lot of land from the plaintiff. He claims that he was induced by the plaintiff's agent to sign the agreement upon false representations that the land was provided with gas, water, and electric light, and that there were other houses erected upon the premises. The contract signed by the defendant contains the clause:

"The first party does agree as soon as practicable after the execution of this contract to provide gas, water, telephone, electric light, and power service for said premises."

This provision, of course, contradicts any extraneous representation that these conveniences were already provided. Moreover, the contract contains a provision that:

"All the terms and representations made prior to or at the time of the contract are embraced herein. No representations, promises or agreements except as are herein contained shall be binding on the parties hereto."

The defendant seeks to evade the force of these provisions by asserting that the agent represented that the paper signed was only an application, and not a contract. It appears, however, that the defend-

ant is a business man employed for 14 years as the bookkeeper at a bank, and that he not only was able and had the opportunity to read the contract, but he retained a copy thereof. Moreover, he produced as a witness his wife, who also signed this contract, and who testified to the same representations, but who admitted on cross-examination that at this interview she telephoned to a relative as to these lots and he told her not to sign. Yet she says: "I told him we had already signed the contract." There was no request thereafter that the signatures should be canceled, but two weeks thereafter the parties went with the agent to examine the property. After examining the property, the defendant signed a statement:

"I have personally inspected lots which I purchased from you in Holly Park and wish to express entire satisfaction; they being exactly as your Mr. Schwabacker represented."

The defendant explains this admission by stating that he also did not have time to read this paper. Written documents and written admissions made before a dispute arose should not be explained away by such statements. The letter is typewritten in four lines, and it is impossible to believe that this business man could not grasp its meaning at a glance. Moreover, the plaintiff not only denies the representations, but produces evidence of weight that, even if made, they were true. Nevertheless, the jury found in favor of the defendant. The probable explanation of their verdict may be found in the distinctly improper and prejudicial remarks made in summing up by defendant's counsel. It is true that the trial justice showed his willingness to withdraw a juror on account of these remarks, but the plaintiff's counsel refused.

[2] Nevertheless they explain a verdict which would otherwise be incomprehensible, and a verdict founded on obvious prejudice should not be permitted to stand.

Judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

PAGE, J., concurs. SEABURY, J., dissents.